IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MICHAEL J. MORRISON AND DANA HARVEY; on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>MARATHON PETROLEUM COMPANY LP, ANDEAVOR LLC, AND MAHI LLC,<br><br>    Defendants. | CASE NO. **5:20-cv-480**<br><br>**PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Michael J. Morrison and Dana Harvey ("Plaintiffs") bring this action individually and as a putative class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all others similarly situated. Plaintiffs, by and through their undersigned attorneys, hereby state:

## I.   INTRODUCTION

1. This class action arises out of Defendant Marathon Petroleum Company LP's ("Marathon") breach of Defendant Andeavor LLC's ("Andeavor") 2018 Incentive Compensation Program ("ICP"). Marathon agreed to pay full non-prorated 2018 ICP bonuses to certain eligible employees who were terminated after Marathon's $23.3 billion acquisition of Andeavor in October 2018. Despite amending the ICP to provide those eligible employees with non-prorated 2018 ICP bonuses as memorialized in the Employee Severance & Benefit Treatment Guide and the S-4 Registration Statement Marathon filed with the Securities and Exchange Commission ("SEC"), as well as making verbal representations of the same during Plaintiffs' exit interviews, Marathon refused to pay eligible employees, including Plaintiffs, their full non-prorated 2018 ICP bonuses.

Plaintiffs, individually and on behalf of all others similarly situated, now seek payment of those portions of their 2018 non-prorated bonuses which Marathon has not paid, exemplary damages, attorneys' fees, and costs.

2. Keith Casey, a former Executive Vice President of Commercial and Value Chain at Andeavor, filed a lawsuit against Defendants in the United States District Court for the Western District of Texas on June 21, 2019 alleging that Defendants improperly withheld payment of his full non-prorated 2018 ICP bonus. *See Keith Casey v. Marathon Petroleum Company LP, et al.*, Civ. No. 19-cv-732 (Doc. 1); *see also* Am. Compl. (Doc. 8). In support of his claims, in addition to referencing the same representations Defendants made to Plaintiffs and other eligible employees as described above, Mr. Casey detailed various conversations he had with Marathon and Andeavor executives, including Fiona Laird, Greg Goff, and Louis Rubiola, leading up to the merger in which it was made clear that Marathon would pay the full non-prorated 2018 ICP bonus to all employees, including those employees who were terminated without cause in connection with the merger. *See* Am. Compl. at ¶¶ 19-21 (Doc. 8). Plaintiffs, individually and on behalf of all others similarly situated, share the same grievances as set forth in Mr. Casey's Amended Complaint – Marathon breached the amended ICP, despite repeatedly confirming that Plaintiffs and other eligible employees would be paid full non-prorated 2018 ICP bonuses. Plaintiffs, individually and on behalf of all others similarly situated, now seek to hold Defendants responsible for failing to fulfill their promise to pay full-year, non-prorated ICP bonuses.

## II.   PARTIES

3. Plaintiff Michael J. Morrison is an individual residing in Bexar County, Texas and is the former Senior Vice President of Marketing.

4.	Plaintiff Dana Harvey is an individual residing in Bexar County, Texas, and is the former Director of Business Insurance.

5.	Defendant Marathon is a limited partnership organized under the laws of Delaware with its principal place of business in Findlay, Ohio. Defendant Marathon may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

6.	Defendant Andeavor is a limited liability company organized under the laws of Delaware. It was formerly headquartered in Texas, but now has a primary place of business in Ohio. Andeavor may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

7.	Defendant Mahi LLC ("Mahi") is a limited liability company organized under the laws of Delaware and has a principal place of business in Ohio. Mahi is a wholly-owned subsidiary of Marathon. According to Marathon filings with the SEC, Mahi was "formed for the sole purpose of merging with and into [Andeavor]." Following the merger of Andeavor and Marathon, Mahi "surviv[ed] the merger as the surviving company." Following the merger, "all of the property, rights privileges, immunities, powers, franchises and authority of [Andeavor] and [Mahi] shall vest in [Mahi] and all debts, liabilities and duties of [Andeavor] and [Mahi] shall become the debts, liabilities and duties of [Mahi]."[1] Marathon Petroleum Company is the sole member of Mahi. Mahi may be served through its registered agent for service of process, The Company Trust Company, Company Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801.

---

[1] *See* AGREEMENT AND PLAN OF MERGER AMONG ANDEAVOR, MARATHON PETROLEUM CORPORATION, MAHI INC. AND MAHI LLC, dated April 29, 2018, and, *available at* https://www.sec.gove/Archives/edgar/data/50104/000119312518140585/d542354dex21.htm.

## III.   JURISDICTION AND VENUE

8. This Court has diversity jurisdiction over the subject matter of this action under 28 U.S.C. § 1332. The amount in dispute exceeds $75,000, exclusive of interest and attorneys' fees. In addition, the Plaintiffs and Defendants are citizens of different states.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the District. Venue is also proper because the parties agreed that "[v]enue shall lie exclusively with the United States District Court in San Antonio, Texas, where applicable, or with the courts of Bexar County, Texas."

## IV.   FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10. Plaintiffs were employees of Andeavor. Michael Morrison worked for Andeavor for over 2 years. As of October 3, 2018, Mr. Morrison served as the Senior Vice President for Marketing. Ms. Harvey worked for Andeavor for over 15 years at the Director level. As of October 12, 2018, Ms. Harvey served as Director of Business Insurance.

11. Plaintiffs were eligible for Andeavor's annual ICP bonus, which was designed to:

   a) Drive a performance-oriented culture by providing a market-competitive, incentive pay opportunity that recognizes and rewards employees based on collective, measurable contributions that deliver value;

   b) Motivate employees to achieve year-over-year incremental improvements to the organization at both the corporate and business unit level; and

   c) Recognize and meaningfully reward high performers.

12. According to the written ICP plan, ICP payouts are based on three components: (a) corporate-wide results; (b) business unit results; and (c) individual employee performance. After these components are ascertained for a particular year, ICP bonuses are calculated using the following strict formula: Incentive-Eligible Earnings X Incentive Target % X Final Scorecard Result % X individual Performance Multiplier.

13.     The ICP plan also states that "[e]mployees who separate from service and meet the eligibility requirements for Terminated employees . . . will be calculated using the formula above; however, Incentive Eligible Earnings will be what is received through the last paycheck." However, the ICP plan expressly allows for exceptions to this rule as long as they are approved "by the Company's senior officer with oversight of compensation matters."

14.     In April 2018, Marathon and Andeavor entered into a definitive merger agreement in which Marathon would acquire all of Andeavor's outstanding shares, representing a total equity value of $23.3 billion and a total enterprise value of $35.6 billion. Mahi (a wholly-owned subsidiary of Marathon) acquired all of Andeavor's debts, liabilities, duties, and obligations following the final merger. The board of directors of Marathon and Andeavor unanimously approved the merger, and expected to close in the second half of 2018. However, before the merger could close, Marathon and Andeavor first needed to persuade shareholders to vote for approval.

15.     Marathon and Andeavor feared that job apprehension amongst Andeavor's employees could jeopardize the merger. Therefore, to ensure that Andeavor employees would be fully incentivized to work tirelessly through the merger's closing toward the combined company's long-term goals, Andeavor and Marathon promised all eligible employees, including Plaintiffs, that they would not prorate their 2018 ICP bonuses.

16.     Indeed, Andeavor and Marathon memorialized this amendment to the ICP by providing Plaintiffs and other eligible employees with Severance & Benefit Treatment Guides, which unequivocally state: "You are eligible for a **full-year 2018 bonus (non-prorated)** based on final year-end performance." (emphasis added). This representation was presented to Plaintiffs and other eligible employees on the letter head of both companies, as follows:

5

 

17.     On July 20, 2018, Marathon filed an S-4 Registration Statement with the SEC setting forth the details of the merger agreement, including the 2018 Annual Cash Performance Bonuses to be paid to eligible Andeavor employees.

18.     The S-4 confirms the terms of the Defendants' amendment of the ICP, as Marathon represented in the S-4 that "Eligible Andeavor employees . . . will receive payment of a 2018 annual cash performance bonus . . . *for the full period* in accordance with the performance criteria and bonus opportunities established by Andeavor for the 2018 bonuses. . . Such bonuses will be paid . . . to bonus eligible employees who remain employed through December 31, 2018 (unless earlier terminated without cause, provided that this does not result in duplication of benefits) at the time Andeavor generally paid such bonuses in the ordinary course . . ." (emphasis added).

19.     Plaintiffs and other eligible employees further received correspondence on Marathon letterhead advising that their 2018 ICP bonuses would be paid on April 1, 2019 and directing questions to Marathon's human resources department.

20.     In addition, Marathon provided Plaintiffs with 2018 Incentive Compensation Statements on Marathon letterhead, which clearly stated that Plaintiffs would receive non-prorated 2018 bonuses, as well as numerous calculations showing that Plaintiffs' severance payments would include full non-prorated 2018 ICP bonuses.

21.     As set forth in Mr. Casey's Amended Complaint, at an Executive Committee meeting in September 2018, Fiona Laird – then Andeavor's Senior Vice President of Human Resources and now Marathon's Chief Human Resources Officer[2] – specifically Mr. Casey, as well

---

[2] On July 25, 2018, Marathon announced its post-merger leadership team, which included Ms. Laird as the Chief

as other present that Marathon had committed to paying the full non-prorated ICP bonuses. In that meeting, Ms. Laird was seated at the table alongside Greg Goff, now Marathon's Executive Vice Chairman, and she emphasized that both she and Mr. Goff would be in leadership at Marathon post-closing to ensure that all commitments would be kept.

22.     In addition, as set forth in Mr. Casey's Amended Complaint, during Casey's last week at Andeavor, he met with Louis Rubiola, who was then the Vice President of Finance in charge of merger integration for Casey's business unit (and currently Marathon's Vice President of Business Planning and Analysis). Casey specifically reviewed with Mr. Rubiola Andeavor's performance through September 2018 in the context of calculating the ICP payments to Andeavor employees. In this conversation, Mr. Rubiola expressed his clear understanding that Marathon was committed to pay the full non-prorated ICP bonuses to Andeavor employees, regardless of whether their employment continued through the end of the year or terminated in advance.

23.     Marathon promised Plaintiffs it would pay them non-prorated ICP bonuses to incentivize them to work tirelessly through the merger's closing and toward the combined company's long-term goals in order to ensure continuity and the continued success of Andeavor's businesses following the merger. Based, in part, on Marathon and Andeavor's representations that Marathon would pay full 2018 non-prorated ICP bonuses, Plaintiffs exceeded their performance expectations.

24.     Defendants made the commitment to pay the full non-prorated ICP bonuses with the clear intent of inducing reliance by Plaintiffs and other Andeavor employees. Plaintiffs relied on this commitment personally as a factor in agreeing to the terms of their separation. Specifically,

---

Human Resources Officer. After the announcement, Ms. Laird spent considerable time at Marathon's headquarters in Findlay, Ohio working with Marathon's Chief Executive Officer Gary Heminger on transition and change-in-control issues. After the announcement, it was apparent Ms. Laird was acting as an agent of Marathon.

7

Ms. Harvey relied on Defendants' representations in deciding she would not remain employed with Marathon until December 31, 2018.

25. On or about October 3, 2018, Marathon acquired Andeavor for $23.3 billion. Upon closing, Andeavor ceased to exist, its common stock discontinued trading on the New York Stock Exchange, and Marathon assumed Andeavor's contractual obligations and common law liabilities.

26. Mr. Morrison was involuntarily terminated without cause on October 3, 2018.

27. Ms. Harvey was involuntarily terminated without cause on October 12, 2018.

28. Mr. Morrison met with Wendy Salmon, Vice President of Compensation, Fritz Aldrine from the legal department, and Anna Palacios-LeBlanc, the lead Marketing Human Resources Business Partner on or about September 25, 2018, for his exit interview. In that meeting, Ms. Salmon specifically discussed Mr. Morrison's 2018 ICP bonus and assured Mr. Morrison he would receive a full-year non-prorated ICP bonus for 2018.

29. In addition to receiving confirmation of the amendment to the 2018 ICP in the form of the Employee Severance & Benefit Treatment Guide, Ms. Harvey initiated multiple conversations to request verbal confirmation that she would receive a full-year 2018 ICP bonus. In August 2018, she spoke with human resources representatives Christy Wisely twice and Laura Mendoza once about her ICP bonus. Both Ms. Wisely and Ms. Mendoza reiterated that Ms. Harvey would receive a full-year non-prorated 2018 ICP bonus.

30. In executing their Separation Agreements, based on the language in those agreements and the accompanying Employee Severance and Benefit Treatment Guides, as well as communications with company representatives, Plaintiffs understood that they would receive a full 2018 non-prorated ICP bonus in March 2019.

31. On or around March 5, 2019, Marathon (from Marathon's own payroll account) paid Mr. Morrison and other employees their 2018 ICP bonus

32. On or around April 8, 2019, Marathon (from Marathon's own payroll account) paid Ms. Harvey and other eligible employees their 2018 ICP bonuses.

33. Marathon did not pay full non-prorated bonuses, but rather prorated the 2018 ICP bonuses based on Plaintiffs' last days of employment.

34. Plaintiffs have repeatedly demanded that Marathon fulfill its promise to pay full 2018 non-prorated ICP bonuses, but to date Marathon has refused to do so.

## V.    CLASS ACTION ALLEGATIONS

35. Plaintiffs bring this action as a class action under Rules 26(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated.

36. Plaintiffs seeks to represent a Rule 23(b) (3) class initially defined as: All eligible Marathon employees who were terminated without cause prior to December 31, 2018 and did not receive their full 2018 non-prorated ICP bonuses.

37. Excluded from the Class are Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries, the judge and court staff to whom this case is assigned.

38. Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the class should be expanded or otherwise modified.

### Numerosity and Ascertainability

39. This action satisfies the requirements of Federal Rule of Civil Procedure 23 (a)(1). Plaintiffs are informed and believe there are approximately fifty eligible employees who did not

receive their full 2018 non-prorated ICP bonuses. Individual joinder of all Class Member is impracticable.

40.     Each of the Classes is ascertainable because its members can be readily identified using public information. Plaintiffs anticipate providing appropriate notice to each certified Class, in compliance with Federal Rule of Civil Procedure 23(c)(2)(b), to be approved by the Court after class certification.

### Predominance and Commonality

41.     This action satisfies the requirements of Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers predominate over questions affecting only individual Class Members. These include, without limitation, the following:

    a) Whether Marathon violated the terms of its separation agreements with Plaintiffs as alleged herein;

    b) Whether Marathon failed to pay Plaintiffs their full 2018 non-prorated ICP bonuses; and

    c) To what extent the members of the Class have sustained damages and the proper measure of damages.

### Typicality

42.     This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs claims are typical of the claims of the Class members, and arise from the same course of conduct by Marathon.

### Adequate Representation

43.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex class actions.

44. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

### Superiority

45. This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3) because the class action is superior to other available methods of fair and efficient adjudication of this controversy. The common questions of law and fact regarding Marathon's conduct and responsibility predominate over any questions affecting only individual Class members.

46. The burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be extensive, making class adjudication the superior alternative under Federal Rule of Civil Procedure 23(b)(3).

47. The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenge of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court making class adjudication superior to other alternatives, under Federal Rule of Civil Procedure 23(b)(3)(D).

48. Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own

determination, certify classes for claims sharing common legal questions; utilize the provisions of Rule 23(d) to certify any particular claims, issues, or common questions of law or fact for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

49. The undersigned counsel for Plaintiffs and the Class request that this Court appoint them to serve as Class counsel; first on an interim basis and then on a permanent basis pursuant to Federal Rule of Civil Procedure 23(g). Undersigned counsel will fairly and adequately represent the interests of the Class, have identified or investigated the Class' potential claims, are experienced in handling class actions, other complex litigation, and contract claims of the type asserted in this action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Breach of Contract**

50. Plaintiffs incorporate by reference the allegations made in the preceding paragraphs as if fully set forth herein.

51. Plaintiffs and Marathon entered into valid and enforceable agreements, wherein Marathon agreed to pay Plaintiffs their full 2018 non-prorated ICP bonuses.

52. Plaintiffs fulfilled their contractual obligations under their agreements with Marathon.

53. Marathon breached its agreements with Plaintiffs by refusing to pay them their full 2018 non-prorated ICP bonuses.

54. Plaintiffs have been damaged as a direct and proximate result of Marathon's breach of contract in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Declaratory Judgment

55. Plaintiffs incorporate by reference the allegations made in the preceding paragraphs as if fully set forth herein.

56. Plaintiffs request that the Court enter the following declaratory relief:

A. A judgment certifying the proposed Rule 42(b)(3) Class and designating Plaintiffs as the named representative of the Class, and designating the undersigned as Class Counsel;

B. A judgment that Plaintiffs and Marathon entered into valid and enforceable agreements, wherein Marathon agreed to pay Plaintiffs their full 2018 non-prorated ICP bonuses;

C. A judgment that Marathon refused and failed to pay Plaintiffs their full 2018 non-prorated ICP bonuses;

D. A judgment that Plaintiffs fully performed their obligations in their agreements with Marathon; and,

E. A judgment that Plaintiffs are entitled to recover damages from Defendants.

## THIRD CLAIM FOR RELIEF

### Specific Performance

57. Plaintiffs incorporate by reference the allegations made in the preceding paragraphs as if fully set forth herein.

58. Plaintiffs seek the equitable remedy of specific performance of their agreements with Marathon – namely, that Marathon pay them their full 2018 non-prorated ICP bonuses.

59. Marathon failed and refuses to comply with its obligation to pay Plaintiffs their full 2018 non-prorated ICP bonuses.

60. Plaintiffs are entitled to specific performance of his/their agreement/s with Marathon to enforce Marathon's obligation to pay Plaintiffs their full 2018 non-prorated ICP bonuses.

61. Plaintiffs fully performed their obligations in their agreements with Marathon.

## VII. ATTORNEYS' FEES AND COSTS

62. Plaintiffs incorporate by reference the allegations made in the preceding paragraphs as if fully set forth herein.

63. Plaintiffs seek an award of all reasonable and necessary attorneys' fees and costs under all other applicable statutory and common law provisions, in addition to any other relief and actual and special damages requested herein.

64. Plaintiffs seek recovery of all reasonable and necessary attorneys' fees and costs incurred relating to this matter, including any and all attorneys' fees that may be necessary in connection with any appeal of this Court's judgment, at all levels of the appellate process.

## VIII. CONDITIONS PRECEDENT

65. All conditions precedent to the relief sought by Plaintiffs have occurred or have been performed.

## IX. JURY DEMAND

66. Plaintiffs demand a jury trial.

## X. PRAYER

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment as follows:

A. A judgment certifying the proposed Rule 23(b)(3) Class and designating Plaintiffs as the named representative of the Class, and designating the undersigned as Class Counsel;

B. A judgment of all declaratory relief in favor of Plaintiffs and the Class, as requested in this Petition and/or any subsequent amended or supplemental petitions;

C. A judgment in favor of Plaintiff**s** and the Class of all available damages allowed for by law, including interest, in an amount to be proven at trial; the monetary relief sought by the class is over $75,000;

D. Equitable relief (specific performance);

E. An award of attorneys' fees and costs;

F. An award of pre-judgment and post-judgment interest, as provided by law; and,

G. Any and all further relief, both in law and equity, to which Plaintiffs may be deemed justly entitled.

Respectfully submitted,

/s/ Stephanie A. Rzpeka
Stephanie A. Rzepka
Texas State Bar No. 24102442
stephanie.rzepka@tuckerellis.com
**TUCKER ELLIS LLP**
405 Main Street, Suite 1000
Houston, TX 77002
281.657.0730
281.657.0739 (fax)

-and-

Scott J. Stitt
Ohio State Bar No. 0073943
scott.stitt@tuckerellis.com
Application for Admission *Pro Hac Vice* Forthcoming
**TUCKER ELLIS LLP**
175 South Third Street, Suite 520
Columbus, OH 43215
614.358.9304
614.358.9712 (fax)

-and-

Chelsea M. Croy Smith
Ohio State Bar No. 0091011
chelsea.croy@tuckerellis.com
Application for Admission *Pro Hac Vice* Forthcoming
**TUCKER ELLIS LLP**
950 Main Avenue, Suite 1100
Cleveland, OH 44113
216.696.5756
216.592.5009 (fax)

**ATTORNEYS FOR PLAINTIFFS MICHAEL J. MORRISON AND DANA HARVEY, INDIVIDUALLY AND AS A PUTATIVE CLASS ACTION PURSUANT TO FRCP 23(a) AND (b)(3), ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**