**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MICHAEL J. MORRISON AND DANA** | § | |
| **HARVEY, On behalf of themselves and** | § | |
| **all others similarly situated** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **Civ. No. 5:20-cv-480-JKP-RBF** |
| | § | |
| **MARATHON PETROLEUM** | § | |
| **COMPANY LP, ANDEAVOR LLC,** | § | |
| **& MAHI LLC** | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT, PRELIMINARY APPROVAL OF THE CERTIFICATION OF THE
CLASS, APPROVAL OF THE CLASS NOTICE, AND FOR FAIRNESS HEARING**

Plaintiffs Michael J. Morrison and Dana Harvey, on behalf of themselves and others similarly situated, hereby move for preliminary approval of the class settlement, preliminary approval of certification of the class for settlement, approval of the class notice, and the setting of a Fairness Hearing for consideration of final approval of the settlement between Plaintiffs and Defendants Marathon Petroleum Company LP and Andeavor LLC (f/k/a Mahi LLC).

## I.      INTRODUCTION

Subject to the Court's approval, the Parties have agreed to settle this matter on a class action basis for a cash payment of $1,813,500. Should the Court grant final approval, each Settlement Class Member will receive, after attorney fees and administration expenses are paid, more than 50% of their claims for non-prorated Incentive Compensation Program ("ICP") bonuses. The proposed settlement ("Settlement") satisfies all of the criteria for preliminary approval and provides an excellent result for the Settlement Class. For these reasons, and others discussed in more detail below, Plaintiffs request that their Motion be granted.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

**A.      Background**

This class action arises out of Defendants Marathon Petroleum Company LP, Andeavor LLC, and Mahi LLC's (collectively, "Marathon") alleged breach of Andeavor's 2018 Incentive Compensation Program ("ICP"). The operative First Amended Class Action Complaint alleges that Marathon agreed to pay full non-prorated 2018 ICP bonuses to certain eligible employees who were terminated after Marathon's $23.3 billion dollar merger with Andeavor closed in October 2018 but before December 31, 2018. (Doc. No. 3). But in 2019, Marathon paid eligible employees, including Plaintiffs, prorated 2018 ICP bonuses. Plaintiffs, individually and on behalf of all others similarly situated, seek payment of those portions of their 2018 non-prorated bonuses which Marathon has

not paid, attorneys' fees, and costs. Marathon denies these allegations; denies any wrongdoing or liability; and has vigorously defended itself in this action.

**B.      Early Motion Practice.**

After filing its First Amended Complaint in May 2020, Plaintiffs moved to consolidate their case for purposes of discovery only with a case filed by another former employee of Andeavor making similar claims about his entitlement to a non-prorated 2018 ICP bonus. Marathon opposed wholesale consolidation of discovery, but agreed to work with Plaintiffs in each case to coordinate discovery, particularly depositions, when appropriate to create efficiencies and avoid the waste of resources. Ultimately, the Court ordered the cases be consolidated for discovery purposes. Pursuant to the Parties' agreement, Marathon was ordered to produce to Plaintiffs all discovery it produced in the other case, which Marathon did.

In July 2020, Marathon moved to dismiss Plaintiffs' First Amended Complaint on grounds that (1) Plaintiffs have not alleged a plausible claim for breach of contract because the ICP, which Marathon allegedly breached, was not an enforceable contract; (2) Plaintiffs have not pled facts to support an amendment to the 2018 ICP to provide for non-prorated bonuses; (3) the statute of frauds bars any oral amendment to the 2018 ICP; and (4) Marathon's sole discretion to amend the ICP forecloses any claim that its payment of prorated bonuses breached the ICP. (Doc. 11). Marathon also sought dismissal of Plaintiffs' claim for declaratory judgment on grounds that the claim merely duplicates the breach-of-contract claim and dismissal of Plaintiffs' claim for specific performance based on Texas law that requires litigants to choose between monetary damages and specific performance.

Ultimately, the Court determined Plaintiffs had sufficiently pled a claim for breach of contract but dismissed Plaintiffs' alternate claims for declaratory judgment and specific

performance.

## C.    Discovery

The Parties have vigorously prosecuted and defended this action and have engaged in initial discovery. They propounded and responded to written discovery and exchanged thousands of pages of documents. Marathon took a deposition of Plaintiff Morrison, and opposed Plaintiffs' attempt to take depositions of certain former Andeavor executives (Docs. 42, 43, and 44).

## D.    The Parties' Settlement Efforts

The Parties attempted an early mediation of this matter with former state district judge Scott Link. The Parties drafted and submitted comprehensive mediation statements that focused all sides on the key issues. Counsel for the Parties attended a one-day Zoom mediation on October 8, 2020. Despite much deliberation, discussion, and compromise, the Parties were not able to reach a resolution at that time.

However, after a period of discovery and the class-related discovery discussed above, settlement discussions resumed between counsel in March 2021, and continued in the months following the mediation. The Parties were ultimately able to reach the proposed Settlement currently before the Court for preliminary approval on July 1, 2021.

## III. SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement, attached hereto as Exhibit A, are summarized below. The proposed Settlement Class consists of 125 members who were eligible for the 2018 Andeavor ICP, were terminated without cause after the merger with Marathon closed on October 1, 2018 but before December 31, 2018, and received prorated ICP bonuses

for 2018. Specifically, "Settlement Class" means, for purposes of settlement only pursuant to Rule 23(b)(3), the class of individuals who Defendants' records indicate worked for Andeavor in 2018, were eligible for a 2019 bonus payment under Andeavor's 2018 ICP, were terminated without cause after Andeavor's merger with Marathon on October 1, 2018 but before December 31, 2018, and to whom Defendants paid a prorated 2018 ICP bonus based on eligible earnings through date of termination. Settlement Agmt., ¶ 2(bb). Excluded from the Settlement Class are Defendants' officers, and directors; Judge Jason K. Pulliam and his court staff; and all individuals who have filed lawsuits about and released Defendants from claims relating to the Andeavor 2018 ICP. *Id.*

## A.     Benefits to the Class.

In exchange for dismissal of this action with prejudice and releases of liability from Plaintiffs and the Settlement Class, Marathon has agreed to pay a total sum of $1,813,500 ("Settlement Amount"). *Id.*, ¶ 4(a). The funds remaining after deduction from the Settlement Amount for Court-approved attorneys' fees and expenses, and expenses for class administration, will be distributed to the Settlement Class. The Parties have agreed that Plaintiffs' counsel Scott J. Stitt of Tucker Ellis LLP ("Class Counsel") may apply to the Court for an award of attorneys' fees and expenses of up to $308,515.89 and anticipate that the expenses of class administration will be approximately $15,000. Assuming no one opts out of the Settlement Class, the Court awards Class Counsel $308,515.89, and the costs of administration are $15,000, that would leave approximately $1,484,984.11 for distribution to the Settlement Class, or more than 82% of the Settlement Amount, which will provide each Settlement Class Member with more than 50% of their claimed damages.

## B.     Notice and Administration.

The Settlement Administrator, Kroll LLC shall be responsible for disseminating the

Class Notice, answering inquiries from the Settlement Class, and processing requests for exclusion. The Settlement Administrator shall also be responsible for establishing a Qualified Settlement Fund, calculating and making the payments to each Settlement Class Member, and calculating and remitting the necessary taxes and related reporting. Kroll LLC's summary of experience and proposal for Settlement Administration and Escrow Agent services is Exhibit 1 to the Declaration of Scott J. Stitt, attached hereto as Exhibit B. The Settlement Administrator and the Parties anticipate that the costs of administration here will be approximately $15,000.

## C.    Attorneys' Fees and Costs

Class Counsel will also petition the Court for an award of attorneys' fees and for reimbursement of litigation expenses totaling no more than $308,515.89. *Id*., ¶ 4(b)(ii). Marathon has agreed not to oppose Plaintiffs' petition.

## D.    Release of Claims

In exchange for payment of the Settlement Amount by Marathon and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs and the Settlement Class will release any claims which were or could have been asserted in this action that in any way relate to the Andeavor 2018 ICP bonus, and will be prohibited from bringing or pursuing any other lawsuits or other actions based on such claims. The released parties and released claims are set forth in full in the Settlement Agreement. *Id*., ¶¶ 2(x), 14.

## E.    Notice and Proposed Schedule of Events

The Settlement Agreement provides that the Parties will request that Marathon provide the names and last known addresses of Settlement Class Members. *Id*., ¶ 8. The proposed Class Notice provides all the information necessary to inform Settlement Class Members about the nature of the Action, the terms of the Settlement, and the procedures for entering an appearance

to be heard on or to object to the Settlement. *Id.*, Ex. A. The Class Notice will be mailed by First Class mail. For returned mail, the Settlement Administrator will engage in standardized processes to reasonably identify and locate Settlement Class Members. The Parties agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|---|---|
| CAFA Notice | Within 10 days after the Settlement Agreement is filed |
| Settlement Administrator to receive Class list and Class contact information | Ten (10) days after entry of the Preliminary Approval Order |
| Mail Settlement Notice | Twenty-one (21) days after entry of the Preliminary Approval Order |
| Motions for final approval of settlement and award of attorneys' fees and expenses plaintiff | No later than 60 days before the Fairness Hearing |
| Requests to be excluded from the Settlement | Thirty (30) days before the Fairness Hearing |
| Objections to the Settlement or motion for attorneys' fees and expenses, notice of intention to appear at Fairness Hearing | Must be received by the Court on or before thirty (30) days before the Fairness Hearing |
| Response to Objections and Settlement Administrator's Notice Declaration | No later than 10 days before the Fairness Hearing |
| Fairness Hearing | No earlier than 120 days from entry of the Preliminary Approval Order |

## IV. ARGUMENT

**A.     The Court Should Certify the Settlement Class.**

As part of the Settlement, Plaintiffs request, without opposition from Marathon, that the Court certify the proposed Settlement Class, defined in Section III above, for purposes of settlement only. Certification of a class is required where the plaintiff demonstrates the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Those requirements are easily met here for settlement purposes.

1.    **The Class satisfies the requirements of Rule 23(a)**

Rule 23(a) provides that a class must satisfy four preconditions: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

a)    **The Class is sufficiently numerous.**

As to numerosity, Circuit Courts have held that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). Here, the potential number of Plaintiffs is 125, who are spread out geographically. As set forth in Rule 23(a)(1), the numerosity requirement is met when "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Given the potential class members and geographical dispersion of these individuals, the joinder of all members is impractical.

b)    **There are common questions of law and fact**

"The commonality requirement of rule 23(a)(2) mandates there be at least one factual or legal issue which is common to all or substantially all of the class members." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 280 (W.D. Tex. 2007) (citing Fed. R. Civ. P. 23(a)(2)). "Thus, '[t]he commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Id.* (quoting *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993)).

Commonality is satisfied here because Marathon's alleged violations of the ICP are the same for all Settlement Class Members. Common issues in this case include: whether

Marathon violated the terms of its separation agreements with Settlement Class Members; whether Marathon failed to pay Settlement Class Members their full 2018 non-prorated ICP bonuses; and to what extent the members of the Settlement Class have sustained damages and the proper measure of damages.

### c)  The typicality requirement of Rule 23(a) is met.

"The typicality requirement does not focus as much on the relative strengths of the case of the named and unnamed plaintiffs as it does on the 'similarity of the legal and remedial theories behind their claims.'" *Garza v. Sporting Goods Properties, Inc.,* No. CIV. A. SA–93–CA–108, 1996 WL 56247, at *4 (W.D.Tex. Feb. 6, 1996) (quoting *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986)). The prerequisite in the settlement context requires "proof that the interests of the class representatives and the class are commonly held for purposes of receiving similar or overlapping benefits from a settlement." *Id.; see also* 4 Newberg on Class Actions § 11:28 (4th ed. 2002). Typicality is satisfied when the named plaintiffs' claims for relief arise from the same common nucleus of operative facts as the claims of absent class members. *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 625 (5th Cir. 1999). Thus, rule 23(a)(3)'s typicality requirement "is satisfied when each class member's claim arises from the same [common] course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir. 1993).

This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims are typical of the claims of the Settlement Class Members, and arise from the same course of conduct by Marathon. That is, an alleged failure by Marathon to pay full non-prorated 2018 ICP bonuses to certain eligible employees who were terminated after

Marathon's merger with Andeavor in October 2018 but before December 31, 2018.

        **d)**      **The proposed Class Representatives and their counsel will fairly and adequately protect the interests of the Class.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." To meet this requirement, plaintiffs must show "[1] the zeal and competence of the representative[s'] counsel and [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees." *Stirman v. Exxon Corp.,* 280 F.3d 554, 563 (5th Cir. 2002) (citations omitted). Those requirements are met here.

Proposed Class Representatives Morrison and Harvey have been actively engaged in the litigation, and they have provided documents to counsel used to draft the First Amended Complaint. Second, they have no conflicts. The named Plaintiffs assert claims similar to those of absent class members and request no individual relief. And the recovery achieved here for every Settlement Class Member – payment of over 50% of their claimed damages – is an excellent result that demonstrates Plaintiffs protected the interests of the absent Settlement Class Members. Therefore, the adequacy requirement of Rule 23(a)(4) is met.

Class Counsel in this case is well-qualified as described in detail in the Declaration of Scott J. Stitt. Stitt Decl. ¶¶ 2-4. Not only do these attorneys have experience litigating class actions, they have worked diligently to litigate the claims. *Id.* ¶¶ 5-11. And Class Counsel has discussed and thoroughly explained to Plaintiffs the nature of a class action and potential advantages and disadvantages to them by proceeding in a class action rather than individually. *Id.* ¶¶ 6, 12.

There should be no question that counsel have brought sufficient skill and resources to litigate this case. Thus, Class Counsel satisfy Rule 23(a)(4) and 23(g).

**2.      The claims meet the requirements of certification under Rule 23(b)(3).**

In addition to meeting the requirements of Rule 23(a), claims must meet at least one of the three provisions of Rule 23(b). The claims meet the requirement of Rule 23(b)(3), which requires "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Rule 23 sets forth several "matters pertinent" to a finding of superiority, including: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action." *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 451 (W.D. Tex. 2019) (quoting Fed. R. Civ. P. 23(b)(3)(A)–(D)).

This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3) because the class action is superior to other available methods of fair and efficient adjudication of this controversy. As discussed in Section IV (A)(1), the common questions of law and fact regarding Marathon's conduct and responsibility predominate over any questions affecting only individual Settlement Class Members. Further, the burden imposed on the judicial system by individual litigation would be extensive, particularly given the geographical location of the potential class members, making class adjudication the superior alternative. The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Settlement Class Member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and

inefficiencies of individualized litigation, the challenge of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court making class adjudication superior to other alternatives. Lastly, Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. Under these circumstances, class certification is superior to other available methods of adjudication.

**B.     The Court should grant preliminary approval of the Settlement because it is fair, reasonable and adequate.**

Rule 23(e) provides that a class action cannot be settled without court approval. To approve the proposed settlement, the Court must determine that it is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(C). "As with other class actions, there is a strong presumption in favor of finding the Settlement Agreement fair." *DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 286 (W.D. Tex. 2007) (citing *Garza v. Sporting Goods Properties, Inc.,* No. CIV. A. SA–93–CA–108, 1996 WL 56247, *11 (W.D.Tex. Feb. 6, 1996). The proposed settlement is not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation." *Id.* (internal quotation omitted). Rather, compromise is the essence of settlement, and the Court may rely on the judgment of experienced counsel for the parties. *Id*.

Rule 23(e)(2) sets forth the following factors, which the Court looks to them to determine whether it will likely grant final approval based on the information currently before the Court:

(A) the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

  (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). However, these factors were not intended to displace the list of factors that each circuit had developed to consider. *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2019 WL 1499475, *3 (E.D. Pa. Apr. 5, 2019).

In assessing whether the settlement is fair, adequate and reasonable, the Fifth Circuit Court of Appeals has identified six key points which should be considered: (1) the existence of fraud or collusion behind the settlement; (2) the probability of Plaintiffs' success on the merits; (3) the range of possible recovery; (4) the complexity, expense and likely duration of the litigation; (5) the stage of the proceedings and the amount of discovery completed; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. 1982)); *see also Garza,* 1996 WL 56247, at *12–23 (considering *Reed* factors when assessing fairness of settlement). The Fifth Circuit has advised courts to be mindful of the "overriding public interest in favor of settlement" in class action suits. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977). Plaintiffs will address each of these factors to the extent they are applicable, many of which overlap.[1]

---

[1] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv).

**1.     The class is adequately represented and negotiations were at arm's length, without fraud or collusion.**

Rule 23(e)(2)(A), requiring adequate representation by the Plaintiffs and their counsel is addressed in Section IV(A)(1)(d). In addition, and in satisfaction of Rule 23(e)(2)(B), the Parties' negotiations were at arm's length, extensive and hard fought, and were conducted over a number of months. Section II(D); Stitt Decl. ¶¶ 11-13. "There is also a presumption of no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) (citing 4 Newberg on Class Actions § 11:51 (4th ed. 2002). Here, there is no evidence of fraud or collusion. Stitt Decl. ¶ 12.

**2.     The complexity, expense, and likely duration of the litigation.**

The fourth *Reed* factor, and Rule 23(e)(2)(C)(i), address the complexity, cost, and likely duration of the litigation. Litigation would be lengthy and expensive if this action were to proceed. To prepare the case for trial, the Parties would first complete class-related discovery, brief a contested class certification motion, and then conduct discovery on the merits – which would likely take at least 12-18 months, include at least 10 depositions, and thousands of pages of documents. In addition to dispositive motion briefing that would likely follow after the close of discovery, trial would have required several attorneys from both Parties spending significant time for a month preparing for a trial. Before the Parties reached trial, they would have to expend substantial time and effort preparing motions *in limine*. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolution and causing more expense. The Settlement Amount and the proposed allocation of payments (with more than 82% of the Settlement paid to the Settlement Class)

reflects that by saving those fees and expenses, Class Counsel agreed to discount its fee to permit an increased recovery to the Settlement Class Members.

### 3. The stage of proceedings and amount of discovery completed.

In order to determine whether the parties have sufficient information to evaluate the terms of the settlement, the Court should look to more than simply the amount of formal discovery which has been completed. *DeHoyos*, 240 F.R.D. at 292 (citing *Cotton v. Hinton,* 559 F.2d 1326, 1332–33 (5th Cir. 1977). "The Court should consider all information which has been available to the parties." *Id*. (citing *Garza v. Sporting Goods Properties, Inc.,* No. CIV. A. SA–93–CA–108, 1996 WL 56247, *13 (W.D.Tex. Feb. 6, 1996)).

As described in Section II (B), the Parties have engaged in written discovery, have exchanged a large number of documents, and Marathon took the deposition of Plaintiff Morrison. Marathon also filed a Motion to Dismiss Plaintiffs' First Amended Complaint, which outlined several of Marathon's arguments and defenses with respect to Plaintiffs' claims. The Parties have had a sufficient opportunity to test their claims and defenses and understand the strengths and weaknesses of their positions. These factors favor approving the proposed Settlement.

### 4. The risks of establishing liability and probability of Plaintiffs' success on the merits.

The second *Reed* factor, and Rule 23(e)(2)(C)(i), take into account the risks of establishing liability and the probability of Plaintiffs' success on the merits. "Once it has been determined whether the settlement is free of fraud or collusion, the most important factor in determining the fairness, adequacy, and reasonableness of the settlement is the likelihood of plaintiffs' success on the merits if the case were to proceed to trial." *DeHoyos v. Allstate Corp*., 240 F.R.D. at 287 (citing *San Antonio Hispanic Police Officers' Org., Inc.,* 188 F.R.D. at 459).

In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial. *Id.*, citing *Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983).

Here, Plaintiffs faced significant risks. Plaintiffs and Marathon had very different views about Marathon's actions, its potential liability, and the likely outcome of the litigation. Plaintiffs' core allegations that Marathon failed to pay full non-prorated 2018 ICP bonuses to certain eligible employees who were terminated after Marathon's acquisition of Andeavor as promised are strongly contested by Marathon. Among other things, Marathon claims that the plain terms of the ICP document make it clear that there was no enforceable contract because the Andeavor ICP was, by its express terms, a discretionary bonus program that the company's Compensation Committee had the "sole discretion [to] terminate, suspend or amend... at any time." Marathon further claims that even if the ICP document was an enforceable contract, the terms of the ICP document state that any potential bonus payment will be prorated—that is, calculated based on "pay received as of the final paycheck"—which is contrary to the compensation sought by Plaintiffs (*i.e.*, compensation for the entire calendar year). According to Marathon, Plaintiffs did not and cannot plausibly allege that the terms of the ICP document were amended to provide for payment of non-prorated bonuses—*i.e.*, bonuses calculated using Plaintiffs' annualized pay.

Additionally, Marathon claims that Plaintiffs' claims are based, in whole or in part, on an alleged oral amendment to the ICP document, an amendment which would be barred by the statute of frauds. Specifically, Marathon points to the ICP document's terms, which state that the job performance giving rise to an ICP bonus payment cannot be completed within one year.

Thus, to the extent it is a contract, Marathon claims the ICP document is subject to the statute of frauds requiring any purported modification be in writing.

Lastly, Marathon claims that even if the ICP document did create an enforceable contract, and even if it was amended to provide for non-prorated bonuses, the ICP document gave Marathon the unlimited and "sole discretion [to] terminate, suspend or amend the ICP program at any time, in whole or in part." According to Marathon, regardless of the bonus amount Marathon ultimately decided in their absolute discretion was the appropriate amount to pay, Plaintiffs could neither allege nor prove any set of facts that would show that Marathon breached the alleged contract.

These are not only defenses on the merits of the claims – they are also potential defenses if the parties contested a motion for certification of the class. Plaintiffs assert that they all received the same communications, as set forth in the First Amended Complaint – communications reflected in the S-4 Registration Statement, Severance and Benefit Treatment Guides, and other documents. But if the Action were to proceed through trial, Plaintiffs would have to overcome Marathon's defenses and arguments on both the merits, as well as for purposes of class certification, which pose significant risks. These factors favor approving the proposed Settlement.

### 5.    The range of recovery.

The third *Reed* factor, and Rule 23(e)(2)(C), consider the adequacy of the settlement and the range of possible recovery. "This factor requires the district court to 'establish the range of possible damages that could be recovered at trial, and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors.'" *ODonnell v. Harris Cty.,*

*Texas*, No. CV H-16-1414, 2019 WL 6219933, *13 (S.D. Tex. Nov. 21, 2019) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983). "The court's consideration of this factor 'can take into account the challenges to recovery at trial that could preclude the class from collecting altogether....'" *Id.* (quoting *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010)). "The question is not whether the parties have reached 'exactly the remedy they would have asked the Court to enter absent the settlement,' but instead 'whether the settlement's terms fall within *a reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits.'" *Klein*, 705 F. Supp. 2d at 656. (quoting *Frew v. Hawkins*, No. 93-CA-065, 2007 WL 2667985, at *6 (E.D. Tex. Sept. 5, 2007)).

In light of the inherent uncertainty in this litigation, a settlement of $1,813,500 – paying more than 50% of the damages claimed by each member of the Settlement Class – is an excellent result for the Settlement Class, particularly given the significant fees and costs it would take to continue litigation when Plaintiffs face appreciable risks in their ability to recover. Plaintiffs' "best day" was approximately $2.9 million, plus interest. Even if that recovery was achieved, Plaintiffs' fee agreements with Class Counsel provided for a 1/3 attorneys' fee, plus costs and expenses – a reduction of about $1 million if the matter proceeded through trial. The resulting "net" amount to the class would be approximately $2 million.

In this Settlement, assuming $15,000 for costs of administration and an award of $308,515.89 for attorneys' fees and expenses, the Settlement Class Members will receive $1,484,984.11 – nearly 75% of their $2 million "best day" recovery. And Class Counsel only seeks fees and expenses of about 17% – about half of what their fee agreements provide. These factors strongly favor approving the proposed Settlement.

**6.      The effectiveness of the proposed method of distributing relief to the class.**

Rule 23(e)(2)(C)(ii) examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Here, the Settlement Agreement contemplates simply paying each Settlement Class Member over 50% of the difference between the prorated ICP bonus they received and the non-prorated ICP bonus they claim they should have received. Settlement Agmt., ¶ 4(b)(iii). The precise amount each Settlement Class Member will receive will be easily calculated after deducting the costs of administration and the award of attorneys' fees and expenses—simply take the remaining amount and divide it by the total amount at issue, and apply that percentage to each Settlement Class Member's damage claim to determine their respective payments. The Settlement Administrator will make those calculations and send a check for the appropriate amount to each Settlement Class Member. This factor favors approving the proposed Settlement.

**7.      The terms of the proposed award of attorneys' fees.**

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. As described above in Section II(C), Class Counsel will file an application seeking an award of attorneys' fees and expenses in an amount not exceeding $308,515.89. *Id.*, ¶ 4(b)(ii). Combined, the fees and costs constitute only 17% of the Settlement Amount. This factor favors approving the proposed Settlement.

**8.      The proposal treats class members equitably relative to each other.**

Under Rule 23(e)(2)(D), the court must consider whether the proposal treats class members equitably relative to each other. As noted in Section IV.B.6 above, distributions to the Settlement Class Members is based on the same legal theory, and pays each Settlement Class Member the same percentage. *Id.*, ¶ 4(b)(iii). Individual Settlement Class Members will not receive preferential

treatment but instead will all receive the same percentage recovery, regardless of the strength or weaknesses inherent with each Settlement Class Member's claims and individual circumstances. *Id*. This factor favors approving the proposed Settlement.

> **9.    The opinions of class counsel, class representatives, and the absent class members.**

"'The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims.'" *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2019 WL 6219933, *14 (S.D. Tex. Nov. 21, 2019) (quoting *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007)).

Here, Class Counsel has thoroughly endorsed the Settlement and believes it secures an excellent result for the Settlement Class. Stitt Decl., ¶ 13. While Class Counsel has not provided separate evidence of the opinions of the class representatives or members, that information will be available once class members have had an opportunity to object. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1068 (S.D. Tex. 2012) (considering the receipt of few or no objections as indicative of the adequacy of the settlement). This factor favors approving the proposed Settlement.

**C.    The Court Should Approve the Notice Plan and Schedule A Fairness Hearing.**

As described in Section III(E) above, the Parties have agreed, subject to Court approval, to a notice plan, which calls for individual mailed notice to Settlement Class Members. This notice and the manner in which it will be disseminated to Settlement Class Members satisfy Rule 23(e)(1) and constitutional due process concerns.

Plaintiffs request that the Court approve Kroll LLC as Settlement Administrator and Escrow Agent. As detailed in Exhibit 1 to the Stitt Declaration, Kroll LLC has extensive experience in the administration of settlements of this type.

The Parties request that the Court schedule a fairness hearing on Plaintiffs' motion for final approval of the Settlement and motion of an award of reasonable attorneys' fees, as set forth in the proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Settlement Class Members to object or exclude themselves, and considering final approval of the Settlement.

**D.      The Court Should Also Issue a Preliminary Injunction**

Finally, pursuant to the terms of the Settlement Agreement, the Class Representatives move for entry of a preliminary injunction enjoining all Settlement Class Members from filing or prosecuting actions asserting claims that would be subject to the Release provided for by the Settlement Agreement unless they first timely and validly submit a written request to be excluded from the Settlement Class.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283 and Federal Rule of Civil Procedure 23(d), the issuance of the requested preliminary injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over this Action, to preserve its ability and jurisdiction to consider and fully effectuate the Settlement and in order to prevent the potential for inconsistent orders, confusion, and disruption that would be caused by the simultaneous litigation of other putative class actions involving the allegations and causes of action asserted by the First Amended Complaint during the Court's consideration of the settlement.

Accordingly, to preserve the Court's jurisdiction pending consideration of whether final approval should be given to the Settlement Agreement, and to avoid irreparable harm to the

settlement process, and after balancing the equities and concluding that the Settlement Agreement is sufficiently fair, reasonable, and adequate that it is due to be preliminarily approved and should be protected from collateral attack during the notice and final approval process, the Class Representatives request an injunction preliminarily barring and enjoining all Settlement Class Members from: (i) instituting, maintaining, prosecuting, intervening in, participating as a party or class member in, or otherwise pursuing or receiving any benefits from any other action other than this Action asserting any claims that would be Released Claims under the terms of the settlement, unless they first exclude themselves from the Settlement Class in accordance with the terms of the Court's Preliminary Approval Order; and (ii) filing, commencing, maintaining, or prosecuting any lawsuit asserting claims within the scope of the proposed Release set forth in the Settlement Agreement as a class action, as a separate class, or as a representative action for purposes of pursuing (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) on behalf of any other Settlement Class Members any of the claims within the scope of the proposed Release contained in the Settlement Agreement, whether or not they have excluded themselves from the Settlement Class.

## V. CONCLUSION

The proposed Settlement meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully requests, without opposition from Marathon, that the Court issue an Order that: (a) grants preliminary approval of the Settlement Agreement; (b) approves the proposed Class Notice, Exhibit A to the Settlement Agreement; (c) appoints Kroll as the Settlement Administrator and Escrow Agent; (d) sets a date for a Fairness Hearing; and (e) issues a preliminary injunction regarding claims that fall within the scope of the Proposed

Release until the Court can conduct the Fairness Hearing.

Respectfully Submitted,

/s/ *Scott J. Stitt*
Scott J. Stitt
Ohio State Bar No. 0073943
scott.stitt@tuckerellis.com
*Admitted Pro Hac Vice*
175 South Third Street, Suite 520
Columbus, OH 43215
614.358.9304 (telephone)
614.358.9712 (fax)

Chelsea M. Croy Smith
Ohio State Bar No. 0091011
chelsea.smith@tuckerellis.com
*Admitted Pro Hac Vice*
950 Main Avenue, Suite 1100
Cleveland, OH 44113
216.696.5756 (telephone)
216.592.5009 (fax)

Stephanie A. Rzepka
Texas State Bar No. 24102442
**TUCKER ELLIS LLP**
2802 Timmons Lane
P.O. Box 27509
Houston, Texas 77027
281.657.0723 (telephone)
281.657.0739 (fax)
stephanie.rzepka@tuckerellis.com

***ATTORNEYS FOR PLAINTIFFS***

## **PROOF OF SERVICE**

I do hereby certify that on October 5, 2021 I electronically filed the foregoing *Plaintiffs'*

*Unopposed Motion for Preliminary Approval of Class Settlement* with the Clerk of Court using

the CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/ Scott J. Stitt*

Scott J. Stitt
Ohio State Bar No. 0073943
scott.stitt@tuckerellis.com
TUCKER ELLIS LLP
175 South Third Street, Suite 520
Columbus, OH 43215
614.358.9304
614.358.9712 (fax)

***ATTORNEYS FOR PLAINTIFFS***