IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL J. MORRISON AND DANA HARVEY, On behalf of themselves and all others similarly situated | § § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § | Civ. No. 5:20-cv-480-JKP-RBF |
| MARATHON PETROLEUM COMPANY LP, ANDEAVOR LLC, & MAHI LLC | § § § § | |
| *Defendants.* | § § | |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs, on the behalf of themselves and the Settlement Class, respectfully move this Court for entry of an Order: (1) granting final approval of the proposed settlement as set forth in the Settlement Agreement dated October 5, 2021; (2) approving the proposed plan for allocating the settlement proceeds to members of the Settlement Class ("Plan of Allocation"); and (3) certifying the Settlement Class for settlement purposes only.

A Memorandum in Support, a copy of the Notice that was mailed to all Class Members, and a proposed order related to this Motion and Plaintiffs' Motion for Attorneys' Fees and Expenses (filed contemporaneously with this Motion) are submitted herewith.

This Motion is also based on the forthcoming Declaration of James Prutsman of Kroll, LLC (the Settlement Administrator), the pleadings and papers on file in this action, and any other matter of which this Court may take judicial notice.

5371970.4

## I.    INTRODUCTION

The proposed settlement provides for the payment of one million eight hundred thirteen thousand five hundred dollars ($1,813,500) in cash (the "Settlement Amount") in exchange for a dismissal of the Action and Release.[1] The Settlement Amount will be used exclusively to: (i) make the settlement payments ordered by the Court to members of the Settlement Class, subject to appropriate Withholdings and Taxes; (ii) compensate the Settlement Administrator for the reasonable Costs of Administration; and (iii) pay the amount ordered by the Court for Class Counsel's Attorneys' Fees and Expenses.

The settlement is the product of years of hard-fought litigation. Class Counsel has diligently and vigorously pursued Plaintiffs' claims against Defendants and was prepared to continue through summary judgment and trial had a settlement not been reached. Among other things, Class Counsel: (i) conducted an extensive factual investigation to develop the factual allegations necessary to plead their claims, which were first pursued in the District Court of Behar County, 408th Judicial District, Cause No. 2019CI22075, before being filed in this Court; (ii) drafted and filed a Complaint and First Amended Complaint; (iii) opposed the majority of Defendants' Motion to Dismiss; (iv) consolidated the Action for purposes of discovery with a case filed by another former employee of Andeavor making similar claims about his entitlement to a non-prorated 2018 ICP bonus; (v) prepared and provided to the mediator detailed mediation materials and supporting evidence for an early mediation; (vi) participated in a full day Zoom mediation with an experienced mediator that was ultimately unsuccessful; (vii) conducted fact discovery, consisting of the request, negotiation for, review and analysis of thousands of pages of

---

[1] Capitalized terms herein have the same meaning and definitions as used in Section 2 of the Parties' Settlement Agreement.

5371970.4

documents from Defendants that had been produced in the consolidated case; (vii) engaged in class-related fact discovery, consisting of the request, negotiation for, and review and analysis of discovery related to the class-action allegations in this case; (ix) engaged in meet and confer efforts over the scope of discovery, including the depositions of certain former Andeavor employees; (x) defended Plaintiff Morrison's deposition; (xi) briefed the issues regarding the extension of the case schedule, and the related issues regarding the subpoenas served on former Andeavor employees for deposition testimony; and (xii) engaged in confidential, direct negotiations with counsel for Defendants between March and July 2021 to achieve a mutually-agreeable resolution. *Plaintiffs' Unopposed Motion for Preliminary Approval* (Doc. No. 66), pp.2-4; *see also*, *Order* (Doc. No. 23), *Plaintiffs' Motion to Extend Phase One Scheduling Order and related briefing* (Doc. Nos. 42, 43 and 44), *Memorandum Opinion and Order* (Doc. No. 50).

The proposed settlement provides Settlement Class Members with a payment of more than 50% of each Settlement Class member's claimed damages, even after attorney fees and other costs and expenses are paid as requested. *Settlement Agreement* (Doc. No. 66-1), at Section 4(b)(iii). Additionally, the settlement avoids the hurdles Plaintiffs would have had to clear to overcome Defendants' defenses as well as the significant costs associated with proceeding through summary judgment and trial and the real risk of Plaintiffs obtaining less, or nothing at all, from Defendants after an unsuccessful trial and/or appeal.

In light of the foregoing, an extensive analysis of the evidence, the relative strengths and weaknesses of the claims and defenses asserted, the serious issues and disputes remaining among the Parties, and the time and expense of proceeding through summary judgment and trial, Class Counsel firmly believes the settlement is fair, reasonable and adequate and in the best interests of the Settlement Class. *Declaration of Scott J. Stitt* (Doc. No. 66-4), at ¶13.

5371970.4

The overwhelmingly positive reaction of the Settlement Class further supports the fairness of the settlement. As of the filing of this Motion, which is 32 days before the Objection/Exclusion Deadline, no objections to the settlement, or any part thereof, have been received. The lack of objections further support Plaintiffs' decision to resolve the Action for one million eight hundred thirteen thousand five hundred dollars ($1,813,500), and strongly supports the inference that the Settlement Class agrees that the settlement and Plan of Allocation are fair, reasonable, and adequate.

## II.    BACKGROUND OF LITIGATION

To avoid repetition, Class Counsel refers the Court to Plaintiffs' Motion for Preliminary Approval, which fully describes the factual and procedural history of the Action including the nature of the claims asserted (Doc. No. 66, Section II.B); settlement negotiations (II.D); the risks inherent in continued litigation (IV.B.2, IV.B.4); and the services that Class Counsel rendered for the benefit of the Settlement Class (IV.A.1.d, IV.B.5 and IV.B.7). Simply put, the claims and issues presented complex issues for resolution in a class-action, which would have resulted in lengthy and expensive litigation – and the possibility that a majority of the class would receive nothing.

## III.    ARGUMENT

### A.    The Settlement Warrants Final Approval Under Fed. R. Civ. P. Rule 23(e).

#### 1.    Standards Governing Approval of Class Action Settlements.

Rule 23(e) provides that a class action cannot be settled without court approval. To approve the proposed settlement, the Court must determine that it is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(C). "As with other class actions, there is a strong presumption in favor of finding the Settlement Agreement fair." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007) (citing *Garza v. Sporting Goods Properties, Inc.,* No. CIV. A. SA–93–CA–108, 1996 WL 56247, *11 (W.D.Tex. Feb. 6, 1996)). The proposed settlement is not required to "achieve some

hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation." *Id.* (internal quotation omitted). Rather, compromise is the essence of settlement, and the Court may rely on the judgment of experienced counsel for the parties. *Id.*

When a settlement "is reached as the result of arms-length negotiations between competent counsel on both sides, the settlement is presumptively valid and ordinarily may be overcome only if its provisions are not within reasonable bounds or are illegal, unconstitutional or against public policy." *City of Omaha Police & Fire Ret. Sys. v. LHC Group,* 2015 WL 965693, *6 (W.D. La. 2015). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 425 (S.D. Tex. 1999) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983) ("[T]he court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties.").

When considering final approval, courts are required to analyze the following factors of Rule 23(e)(2) to determine if the proposed settlement is fair, reasonable, and adequate:

   (A) the class representatives and counsel have adequately represented the class;

   (B) the proposal was negotiated at arm's length;

   (C) the relief provided for the class is adequate, taking into account:

      (i)   the costs, risks, and delay of trial and appeal;

      (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)  any agreement required to be identified under Rule 23(e)(3); and

   (D) the proposal treats class members equitably relative to each other.

5371970.4

Fed. R. Civ. P. 23(e).

These factors were not intended to displace the list of factors each circuit had developed to consider. *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2019 WL 1499475, *3 (E.D. Pa. Apr. 5, 2019). In assessing whether the settlement is fair, adequate and reasonable, the Fifth Circuit has identified six key points which should be considered: (1) the existence of fraud or collusion behind the settlement; (2) the probability of Plaintiffs' success on the merits; (3) the range of possible recovery; (4) the complexity, expense and likely duration of the litigation; (5) the stage of the proceedings and the amount of discovery completed; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. 1982)); *see also Garza,* 1996 WL 56247, at *12–23 (considering *Reed* factors when assessing fairness of settlement). The Fifth Circuit has further advised courts to be mindful of the "overriding public interest in favor of settlement" in class action suits. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).

## 2.    The Class is Adequately Represented and the Settlement was Negotiated at Arm's Length.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." To meet this requirement, plaintiffs must show "[1] the zeal and competence of the representative[s'] counsel and [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees." *Stirman v. Exxon Corp.,* 280 F.3d 554, 563 (5th Cir. 2002) (citations omitted).

The Class Representatives have been actively engaged in the litigation, and they have provided documents to Class Counsel used to draft the Complaint and First Amended Complaint. They also have no conflicts. The Class Representatives assert claims similar to those of absent

5371970.4

class members and request no individual relief. And the recovery here for every member of the

Settlement – payment of over 50% of their claimed damages – is a result that demonstrates that

the Class Representatives protected the interests of the absent Settlement Class members. Thus,

Rule 23(a)(4)'s adequacy requirement is satisfied.

Class Counsel in this case is also well-qualified, as described in the Declaration of Scott J.

Stitt submitted with the Motion for Preliminary Approval. Doc. No. 66, Ex. B, Stitt Decl. ¶¶ 2-4.

Not only does Class Counsel have experience litigating class actions, they have worked

extensively to litigate the claims. *Id*. ¶¶ 5-11. And Class Counsel has discussed and thoroughly

explained to Plaintiffs the nature of a class action and potential advantages and disadvantages to

them by proceeding in a class action rather than individually. *Id*. ¶¶ 6, 12.

In addition, the Parties' negotiations were at arm's length, extensive and hard fought, and

were conducted over a number of months. *Id*. ¶¶ 11-13.

Finally, "[t]here is also a presumption of no fraud or collusion occurred between counsel,

in the absence of any evidence to the contrary." *DeHoyos*, 240 F.R.D. at 287 (citing

4 Newberg on Class Actions § 11:51 (4th ed. 2002)). And here, there is no evidence of fraud or

collusion thereby satisfying the first *Reed* factor. Doc. No. 66, Ex. B, Stitt Decl. ¶ 12.

### 3.    The complexity, expense, and likely duration of the litigation.

The fourth *Reed* factor, and Rule 23(e)(2)(C)(i), address the complexity, cost, and likely

duration of the litigation. Litigation would be lengthy and expensive if this Action were to proceed.

To prepare the case for trial, the Parties would first complete class-related discovery, brief a

contested class certification motion, and then conduct discovery on the merits – which would likely

take at least 12-18 months, include at least 10 depositions, and thousands of pages of documents.

In addition to dispositive motion briefing that would likely follow the close of discovery, trial

would have required several attorneys from both Parties spending significant time to prepare.

Before the Parties reached trial, they would have to expend substantial time and effort preparing motions *in limine*. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolution and causing more expense. The Settlement Amount and the proposed Plan of Allocation (with more than 80% of the Settlement Amount paid to the Settlement Class) reflects that by saving those fees and expenses, Class Counsel agreed to discount its fee to permit an increased recovery to the members of the Settlement Class.

### 4.    The stage of proceedings and amount of discovery completed.

In order to determine whether the Parties have sufficient information to evaluate the terms of the settlement, the Court should look to more than simply the amount of formal discovery which has been completed. *DeHoyos*, 240 F.R.D. at 292 (citing *Cotton,* 559 F.2d at 1332–33). "The Court should consider all information which has been available to the parties." *Id.* (citing *Garza*, 1996 WL 56247, at *13).

As described in Plaintiffs' Motion for Preliminary Approval, the Parties have engaged in written discovery, have exchanged a large number of documents, and Defendants took the deposition of Plaintiff Morrison. Defendants also filed a Motion to Dismiss Plaintiffs' First Amended Complaint, which outlined several of Defendants' arguments and defenses with respect to Plaintiffs' claims. Further, the Parties prepared and provided to the mediator detailed mediation materials and supporting evidence and participated in a full day Zoom mediation with an experienced mediator. The Parties have had a sufficient opportunity to test their claims and defenses and understand the strengths and weaknesses of their positions. These factors favor final approval of the Settlement.

5371970.4

### 5. The risks of establishing liability and probability of Plaintiffs' success on the merits.

The second *Reed* factor, and Rule 23(e)(2)(C)(i), take into account the risks of establishing liability and the probability of Plaintiffs' success on the merits. "Once it has been determined whether the settlement is free of fraud or collusion, the most important factor in determining the fairness, adequacy, and reasonableness of the settlement is the likelihood of plaintiffs' success on the merits if the case were to proceed to trial." *DeHoyos*, 240 F.R.D. at 287 (citing *San Antonio Hispanic Police Officers' Org., Inc.,* 188 F.R.D. 433, 459 (W.D. Tex. 1999)). In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial. *Id.* (citing *Reed,* 703 F.2d at 172).

Here, Plaintiffs faced significant risks. Plaintiffs and Defendants had very different views about Defendants' actions, their potential liability, and the likely outcome of the litigation. Plaintiffs' core allegations that Defendants failed to pay full non-prorated 2018 ICP bonuses to certain eligible employees who were terminated after Marathon's acquisition of Andeavor as promised are strongly contested by Defendants. Among other things, Defendants claim that the plain terms of the ICP document make it clear that there was no enforceable contract because the Andeavor ICP was, by its express terms, a discretionary bonus program that the company's Compensation Committee had the "sole discretion [to] terminate, suspend or amend... at any time." Defendants further claim that even if the ICP document was an enforceable contract, the terms of the ICP document state that any potential bonus payment will be prorated—that is, calculated based on "pay received as of the final paycheck"—which is contrary to the compensation sought by Plaintiffs (*i.e.*, compensation for the entire calendar year). According to Defendants, Plaintiffs did not and

cannot plausibly allege that the terms of the ICP document were amended to provide for payment of non-prorated bonuses—*i.e.*, bonuses calculated using Plaintiffs' annualized pay.

Additionally, Defendants claim that Plaintiffs' claims are based, in whole or in part, on an alleged oral amendment to the ICP document, an amendment which would be barred by the statute of frauds. Specifically, Defendants point to the ICP document's terms, which state that the job performance giving rise to an ICP bonus payment cannot be completed within one year. Thus, to the extent it is a contract, Defendants claim the ICP document is subject to the statute of frauds requiring any purported modification be in writing.

Lastly, Defendants claim that even if the ICP document did create an enforceable contract, and even if it was amended to provide for non-prorated bonuses, the ICP document gave Defendants the unlimited and "sole discretion [to] terminate, suspend or amend the ICP program at any time, in whole or in part." According to Defendants, regardless of the bonus amount Defendants ultimately decided in their absolute discretion was the appropriate amount to pay, Plaintiffs could neither allege nor prove any set of facts that would show that Defendants breached the alleged contract.

These are not only defenses on the merits of the claims – they are also potential defenses if the Parties contested a motion for certification of the class. Plaintiffs assert that they all received the same communications, as set forth in the First Amended Complaint – communications reflected in the S-4 Registration Statement, Severance and Benefit Treatment Guides, and other documents. But if the Action were to proceed through trial, Plaintiffs would have to overcome Defendants' defenses and arguments on both the merits, as well as for purposes of class certification, which pose significant risks.

5371970.4

There is also the risk that some of the class members would not be included in the definition of the class even if the class was certified by the Court, or that they would receive less than other members of the class because certain class members allegedly received communications upon their separation that were clearer on the subject of non-prorated ICP bonuses than other class members. These differences could have resulted in sub-classes that received lower amounts than other classes. But this settlement provides that all class members are included in the same class, and they all benefit from the strongest claims – which provides all class members with over 50% of their ICP claims. The settlement therefore benefits not only those class members with the strongest claims – it also provides the *same* benefit to the class members who may have weaker claims. These factors favor final approval of the settlement.

### 6.        The range of recovery.

The third *Reed* factor, and Rule 23(e)(2)(C), consider the adequacy of the settlement and the range of possible recovery. "This factor requires the district court to 'establish the range of possible damages that could be recovered at trial, and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors.'" *ODonnell v. Harris Cty., Texas*, No. CV H-16-1414, 2019 WL 6219933, *13 (S.D. Tex. Nov. 21, 2019) (quoting *Maher*, 714 F.2d at 460). "The court's consideration of this factor 'can take into account the challenges to recovery at trial that could preclude the class from collecting altogether....'" *Id*. (quoting *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010)). "The question is not whether the parties have reached 'exactly the remedy they would have asked the Court to enter absent the settlement,' but instead 'whether the settlement's terms fall within *a reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits.'" *Klein*, 705 F. Supp. 2d at 656 (quoting *Frew v. Hawkins*, No. 93-CA-065, 2007 WL 2667985, at *6 (E.D. Tex. Sept. 5, 2007)).

In light of the inherent uncertainty in this litigation, a settlement of $1,813,500 – an amount that is approximately 60% of the value of the claims if all class members were successful at trial, and paying more than 50% of the value claimed by each member of the Settlement Class after accounting for legal fees and class administration expenses – is an favorable result for the Settlement Class, particularly given the significant fees and costs it would take to continue litigation when Plaintiffs face appreciable risks in their ability to recover.

Plaintiffs' "best day" was approximately $2.9 million, plus interest. Even if that recovery was achieved, Plaintiffs' fee agreements with Class Counsel provided for a 1/3 attorneys' fee, plus costs and expenses – a reduction of about $1 million if the matter proceeded through trial. The resulting "net" amount to the class would be approximately $2 million. In this Settlement, assuming $15,000 for costs of administration and an award of $308,515.89 for attorneys' fees and expenses, the Settlement Class members will receive $1,484,984.11 – nearly 75% of their $2 million "best day" recovery. And Class Counsel only seeks fees and expenses of about 17% – about half of what their fee agreements provide, to facilitate settlement at this stage, which Class Counsel would not be able to do after incurring litigation time and expense through discovery and trial. These factors favor final approval of the settlement.

### 7.    The effectiveness of the proposed method of distributing relief to the class.

Rule 23(e)(2)(C)(ii) examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Here, the Settlement Agreement contemplates simply paying each Settlement Class Member over 50% of the difference between the prorated ICP bonus they received and the non-prorated ICP bonus they claim they should have received. *Settlement Agreement* (Doc. No. 66-1), at Section 4(b)(iii).

5371970.4

The precise amount each Settlement Class member will receive will be easily calculated after deducting the costs of administration and the award of attorneys' fees and expenses—simply take the remaining amount and divide it by the total amount at issue, and apply that percentage to each Settlement Class member's damage claim to determine their respective payments. *Id.* Every Settlement Class Member will receive the same percentage of their claim – 52.5% of their unpaid ICP bonus if calculated without prejudgment interest, and 50% of their claim if one year of prejudgment interest (under the Texas prejudgment interest statute) is applied. The Settlement Administrator will make those calculations and send a check for the appropriate amount to each Settlement Class Member. *Id.* at Sections 4(b)(iii) and 7). These factors favor final approval of the settlement.

### 8.      The terms of the proposed award of attorneys' fees.

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. Simultaneous with this filing and in accordance with the Settlement Agreement, Class Counsel filed an application seeking an award of attorneys' fees and expenses totaling $308,515.89. Combined, the fees and expenses constitute only 17% of the Settlement Amount, which is significantly less than Class Counsel's original fees, as Class Counsel agreed to discount its fee to permit an increased recovery to the members of the Settlement Class. *Stitt Decl.* (Doc. No. 66-4), ¶13. Once Defendants deposit the Settlement Amount into the Qualified Settlement Fund, the Settlement Administrator will pay the Attorneys' Fees and Expenses to Class Counsel as awarded by the Court. *Settlement Agreement*, Sections 4(b)(ii) and 7. This factor favors final approval of the settlement.

### 9.      The proposal treats class members equitably relative to each other.

Under Rule 23(e)(2)(D), the court must consider whether the proposal treats class members equitably relative to each other. As noted above, distributions to the Settlement Class Members is

13

based on the same legal theory, and pays each Settlement Class Member the same percentage. *Settlement Agreement*, Section 4(b)(iii). Individual Settlement Class members will not receive preferential treatment but instead will all receive the same percentage recovery, regardless of the strength or weaknesses inherent with each Settlement Class member's claims and individual circumstances. This factor favors final approval of the proposed settlement.

### 10. The opinions of class counsel, class representatives, and the absent class members.

"'The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims.'" *ODonnell*, 2019 WL 6219933, at *14 (quoting *DeHoyos*, 240 F.R.D. at 292). Here, Class Counsel has thoroughly endorsed the Settlement and believes it secures an excellent result for the Settlement Class. *Stitt Decl.*, ¶13. Moreover, as of the filing of this Motion, which is only 32 days before the Objection/Exclusion Deadline, no objections to the settlement, or any part thereof, have been received. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1068 (S.D. Tex. 2012) (considering the receipt of few or no objections as indicative of the adequacy of the settlement). These factors favor final approval of the proposed settlement.

### B. The Notice to the Settlement Class Satisfies Fed. R. Civ. P. 23 and Due Process

The Notice to the Settlement Class satisfies the requirements of Fed. R. Civ. P. 23, which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice also satisfies Rule 23(e)(1), which requires the notice be "reasonable" in that it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Maher,* 714 F.2d at 451; *see also In re Katrina Canal Breaches*

*Litig.,* 628 F.3d 185, 197 (5th Cir. 2010) ("a settlement notice need only satisfy the 'broad reasonableness standards imposed by due process.'").

Both the substance of the Notice and the method of its dissemination to potential members of the Settlement Class satisfies these standards. The Notice includes all information required by Rule 23(c)(2)(B) including, among other things: (i) a description of the material terms of the proposed class action settlement; (ii) that members of the Settlement Class may direct inquiries by email to the Settlement Administrator for additional information and documents regarding the proposed settlement and the Action; (iii) that the Settlement Class has been preliminarily certified for purposes of settlement only; (iv) that any relief to members of the Settlement Class offered by the settlement is contingent upon the Court's final approval of the settlement, which will not become effective until the Final Settlement Date; (v) that members of the Settlement Class have the right to request exclusion from the Settlement Class and the settlement; (vi) that members of the Settlement Class Members have the right to object to the terms of the proposed class action settlement; (vii) a date by which members of the Settlement Class may request exclusion from the Settlement Class or object to the terms of the proposed settlement, and the procedures for doing so; (viii) that Defendants have agreed that Class Counsel and the Class Representatives have the right to move the Court for an award of Attorneys' Fees and Expenses to be paid to Class Counsel from the Settlement Amount, in a total amount to be determined by the Court but not to exceed $308,515.89; (ix) that approval of the settlement is not made contingent upon any particular amount of Attorneys' Fees and Expenses being awarded by the Court; (x) that final approval of the proposed settlement will release certain rights of members of the Settlement Class; and (xi) the date and time at which the Fairness Hearing

5371970.4

will occur, and that it may be rescheduled without further notice to the Settlement Class. *Notice*, attached as Exhibit A.

Further, Plaintiffs executed the Notice in accordance with the provisions of the Preliminary Approval Order. Within ten (10) days of entry of the Preliminary Approval Order, Defendants provided the Settlement Administrator with the last known addresses of each member of the Settlement Class, and the Settlement Administrator sent to each member of the Settlement Class, by First-Class US Mail, the Notice, following the instructions provided by the Court in the Preliminary Approval Order. In total, the Settlement Administrator mailed 125 copies of the Notice to members of the Settlement Class.

The Settlement Administrator also established an email address to which members of the Settlement Class could direct questions and requests for information about the settlement. *See, Notice.* This mail-notice method, coupled with the establishment of an email address where questions and requests for information about the proposed settlement could be directed, was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

In addition, on behalf of Defendants, the Settlement Administrator caused notice of the proposed settlement to be served upon the appropriate state and federal officials pursuant to 28 U.S.C. § 1715.  No state or federal official receiving notice of the proposed settlement has objected or questioned the fairness and adequacy of the proposed settlement in any way.

### C.     The Plan of Allocation Satisfies Rule 23 and Due Process

Assessment of a plan of allocation in a class action is governed by the same standard of review applicable to the settlement as a whole-the plan must be "fair, adequate and reasonable and is not the product of collusion between the parties." *In re Chicken Antitrust Litig. Am. Poultry,* 669 F.2d 228, 238 (5th Cir. 1982). A plan of allocation need not be perfect-to be fair, reasonable, and adequate, "[t]he allocation formula need only have a reasonable, rational basis, particularly if

5371970.4

recommended by 'experienced and competent' class counsel." *In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, *10 (W.D. Tex. June 11, 2010).

The Plan of Allocation is set forth in the court-approved Notice. *Notice*, ¶6. Under the Plan of Allocation, "every member of the Class (who did not exclude themselves from the settlement) will receive more than fifty percent (50%) of the difference between the prorated 2018 ICP bonus they received from Defendants and the non-prorated 2018 ICP bonus they claim they should have received." *Id.* In addition to Class Counsel and Defendant's counsel approving the Plan of Allocation, to date, no objections to the Plan of Allocation have been filed as of this date, suggesting that the Settlement Class also finds the Plan of Allocation to be fair, adequate and reasonable. *In re Marsh & McLennan Companies, Inc. Sec. Litig.,* 2009 WL 5178546, *13 (S.D.N.Y. 2009) ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs respectfully move this Court for entry of an Order: (1) granting final approval of the proposed settlement as set forth in the Settlement Agreement dated October 5, 2021; (2) approving the proposed plan for allocating the settlement proceeds to members of the Settlement Class ("Plan of Allocation"); and (3) certifying the Settlement Class for settlement purposes only.

5371970.4

Respectfully Submitted,

/s/ *Scott J. Stitt*
Scott J. Stitt
Ohio State Bar No. 0073943
scott.stitt@tuckerellis.com
*Admitted Pro Hac Vice*
175 South Third Street, Suite 520
Columbus, OH 43215
614.358.9304 (telephone)
614.358.9712 (fax)

Chelsea M. Croy Smith
Ohio State Bar No. 0091011
chelsea.smith@tuckerellis.com
*Admitted Pro Hac Vice*
950 Main Avenue, Suite 1100
Cleveland, OH 44113
216.696.5756 (telephone)
216.592.5009 (fax)

Stephanie A. Rzepka
Texas State Bar No. 24102442
**TUCKER ELLIS LLP**
2802 Timmons Lane
P.O. Box 27509
Houston, Texas 77027
281.657.0723 (telephone)
281.657.0739 (fax)
stephanie.rzepka@tuckerellis.com

***ATTORNEYS FOR PLAINTIFFS***

5371970.4

## PROOF OF SERVICE

I do hereby certify that on December 17, 2021 I electronically filed the foregoing *Plaintiffs'*

*Unopposed Motion and Memorandum in Support for Final Approval of Class Action Settlement*

*and Plan of Allocation of Settlement Proceeds* with the Clerk of Court using the CM/ECF system,

which will send notification of such filing to all counsel of record.

/s/ Scott J. Stitt
Scott J. Stitt
Ohio State Bar No. 0073943
scott.stitt@tuckerellis.com
TUCKER ELLIS LLP
175 South Third Street, Suite 520
Columbus, OH 43215
614.358.9304
614.358.9712 (fax)

*ATTORNEYS FOR PLAINTIFFS MICHAEL J.*
*MORRISON AND DANA HARVEY,*
*INDIVIDUALLY AND AS A PUTATIVE CLASS*
*ACTION PURSUANT TO FRCP 12(a) AND*
*(b)(3), ON BEHALF OF ALL OTHERS*
*SIMILARLY SITUATED*

5371970.4